MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X

AGUSTIN MORALES CAMPOS, AGUSTIN
ROSALES SALAZAR, DAMIAN GARCIA
ROMANO, JOSE CAMPOS, JOSE
TRINIDAD CAMPOS, MIGUEL ANGEL
LEYVA GALICIA, SANTIAGO CAMPOS
PERAL, and SILVESTRE BASURTO
MONTIEL, *individually and on behalf of
others similarly situated,*

|  |  |
|---|---|
|  | **COMPLAINT** |
| *Plaintiffs*, | **COLLECTIVE ACTION UNDER** **29 U.S.C. § 216(b)** |
|  | **ECF Case** |

-against-

UP THAI CORP.  (D/B/A TUNG THONG
181), TUNG THONG INC.  (D/B/A TUNG
THONG), JIRAPAT PUTTANAWONG,
THITIPHAN SURIYONG, and
THANAPHAN LAONUTWUTTIKUL,

*Defendants.*

-------------------------------------------------------X

Plaintiffs Agustin Morales Campos, Agustin Rosales Salazar, Damian Garcia Romano,

Jose Campos, Jose Trinidad Campos, Miguel Angel Leyva Galicia, Santiago Campos Peral, and

Silvestre Basurto Montiel, individually and on behalf of others similarly situated (collectively,

"Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C., upon their

knowledge and belief, and as against Up Thai Corp. (d/b/a Tung Thong 181), Tung Thong Inc.

(d/b/a Tung Thong), ("Defendant Corporations"), Jirapat Puttanawong, Thitiphan Suriyong, and

Thanaphan Laonutwuttikul, ("Individual Defendants"), (collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

1.      Plaintiffs are both current and former employees of Defendants Up Thai Corp. (d/b/a Tung Thong 181), Tung Thong Inc. (d/b/a Tung Thong), Jirapat Puttanawong, Thitiphan Suriyong, and Thanaphan Laonutwuttikul.

2.       Defendants own, operate, or control two Thai restaurants, located at 812 West 181st Street, New York, New York 10033 under the name "Tung Thong 181" (hereinafter "the West 181st Street location") and  at 561 West 169th Street, New York, New York 10032 under the name "Tung Thong" (hereinafter "the West 169th Street location").

3.      Upon information and belief, individual Defendants Jirapat Puttanawong, Thitiphan Suriyong, and Thanaphan Laonutwuttikul, serve or served as owners, managers, principals, or agents of Defendant Corporations and, through these corporate entities, operate or operated the restaurants as a joint or unified enterprise.

4.      Plaintiffs have ostensibly been employed as delivery workers at the Thai restaurants located at 812 West 181st Street, New York, New York 10033 and 561 West 169th Street, New York, New York 10032.

5.      Plaintiffs have ostensibly been employed as delivery workers. However, they have been required to spend a considerable part of their work day performing non-tipped duties, including but not limited to preparing food, cutting and seasoning meats, cutting vegetables, making sauces, washing dishes, taking out the trash, stocking deliveries, sweeping and mopping the restaurant, cleaning the kitchen and the bathrooms, twisting and tying up cardboard boxes, and closing the restaurant (hereafter the "non-tipped duties").

6.     At all times relevant to this Complaint, Plaintiffs have worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they have worked.

7.     Rather, Defendants have failed to maintain accurate recordkeeping of the hours worked and have failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.     Further, Defendants have failed to pay Plaintiffs the required "spread of hours" pay for any day in which they have had to work over 10 hours a day.

9.     Defendants have employed and accounted for Plaintiffs as delivery workers in their payroll, but in actuality their duties have required a significant amount of time spent performing the non-tipped duties alleged above.

10.     Regardless, at all relevant times, Defendants have paid Plaintiffs at a rate that is lower than the required tip-credit rate.

11.     However, under both the FLSA and NYLL, Defendants are not entitled to take a tip credit because Plaintiffs' non-tipped duties have exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

12.     Upon information and belief, Defendants have employed the policy and practice of disguising Plaintiffs' actual duties in payroll records by designating them as delivery workers instead of non-tipped employees. This has allowed Defendants to avoid paying Plaintiffs at the minimum wage rate and has enabled them to pay them at the lower tip-credit rate (which they still have failed to do).

13.     In addition, Defendants have maintained a policy and practice of unlawfully appropriating Plaintiffs' and other tipped employees' tips and have made unlawful deductions from

these Plaintiffs' and other tipped employees' wages.

14.     Defendants' conduct has extended beyond Plaintiffs to all other similarly situated employees.

15.     At all times relevant to this Complaint, Defendants have maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

16.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

17.     Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

19.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district,

Defendants maintain their corporate headquarters and offices within this district, and Defendants operate two Thai restaurants located in this district. Further, Plaintiffs have been employed by Defendants in this district.

## PARTIES

### *Plaintiffs*

20.     Plaintiff Agustin Morales Campos ("Plaintiff Morales" or "Mr. Morales") is an adult individual residing in New York County, New York.

21.     Plaintiff Morales has been employed by Defendants at the West 169th Street location and at the West 181st Street location from approximately May 2014 until on or about May 2018 and from approximately October 2018 until the present date.

22.     Plaintiff Agustin Rosales Salazar ("Plaintiff Rosales" or "Mr. Rosales") is an adult individual residing in New York County, New York.

23.     Plaintiff Rosales was employed by Defendants at the West 181st Street location from approximately May 2017 until on or about May 1, 2019.

24.     Plaintiff Damian Garcia Romano ("Plaintiff Garcia" or "Mr. Garcia") is an adult individual residing in New York County, New York.

25.     Plaintiff Garcia has been employed by Defendants at the West 169th Street location and the West 181st Street location from approximately October 2017 until the present date.

26.     Plaintiff Jose Campos ("Plaintiff Campos" or "Mr. Campos") is an adult individual residing in New York County, New York.

27.     Plaintiff Campos was employed by Defendants at the West 169th Street location and the West 181st Street location from approximately May 2014 until on or about May 2016, from

approximately November 2016 until on or about May 20, 2017, and from approximately December 11, 2017 until on or about May 1, 2019.

28.     Plaintiff Jose Trinidad Campos ("Plaintiff Trinidad" or "Mr. Trinidad") is an adult individual residing in Bronx County, New York.

29.     Plaintiff Trinidad was employed by Defendants at the West 169th Street location from approximately October 2018 until on or about May 10, 2019.

30.     Plaintiff Miguel Angel Leyva Galicia ("Plaintiff Leyva" or "Mr. Leyva") is an adult individual residing in New York County, New York.

31.     Plaintiff Leyva has been employed by Defendants at the West 169th Street location from approximately July 2018 until the present date.

32.     Plaintiff Santiago Campos Peral ("Plaintiff Santiago" or "Mr. Santiago") is an adult individual residing in New York County, New York.

33.     Plaintiff Santiago has been employed by Defendants at the West 169th Street location from approximately September 21, 2014 until the present date.

34.     Plaintiff Silvestre Basurto Montiel ("Plaintiff Basurto" or "Mr. Basurto") is an adult individual residing in New York County, New York.

35.     Plaintiff Basurto has been employed by Defendants at the West 169th Street location from approximately September 2012 until on or about December 2012 and from approximately April 2014 until the present date.

*Defendants*

36.     At all relevant times, Defendants own, operate, or control two Thai restaurants, located at 812 West 181st Street, New York, New York 10033 under the name "Tung Thong 181" and at 561 West 169th Street, New York, New York 10032 under the name "Tung Thong".

37.     Upon information and belief, Up Thai Corp. (d/b/a Tung Thong 181) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 812 West 181st Street, New York, New York 10033.

38.     Upon information and belief, Tung Thong Inc. (d/b/a Tung Thong) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 561 West 169th Street, New York, New York 10032.

39.     Defendant Jirapat Puttanawong is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Jirapat Puttanawong is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Jirapat Puttanawong possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

40.     Defendant Thitiphan Suriyong is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Thitiphan Suriyong is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Thitiphan Suriyong possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including

Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

41.     Defendant Thanaphan Laonutwuttikul is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Thanaphan Laonutwuttikul is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Thanaphan Laonutwuttikul possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

### *Defendants Constitute Joint Employers*

42.     Defendants operate two Thai restaurants located in the Washington Heights section of Manhattan in New York City.

43.     Individual Defendants, Jirapat Puttanawong, Thitiphan Suriyong, and Thanaphan Laonutwuttikul, possess operational control over Defendant Corporations, possess ownership interests in Defendant Corporations, and control significant functions of Defendant Corporations.

44.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

45.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

46.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

47.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

48.     Upon information and belief, Individual Defendants Jirapat Puttanawong, Thitiphan Suriyong, and Thanaphan Laonutwuttikul operate Defendant Corporations as either alter egos of themselves and/or fail to operate Defendant Corporations as entities legally separate and apart from themselves, by among other things:

    a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporations as Corporations,

    b)  defectively forming or maintaining the corporate entities of Defendant Corporations, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

    c)  transferring assets and debts freely as between all Defendants,

    d)  operating Defendant Corporations for their own benefit as the sole or majority shareholders,

    e)  operating Defendant Corporations for their own benefit and maintaining control over these corporations as closed Corporations,

    f)  intermingling assets and debts of their own with Defendant Corporations,

    g)  diminishing and/or transferring assets of Defendant Corporations to avoid full liability as necessary to protect their own interests, and

    h)  Other actions evincing a failure to adhere to the corporate form.

49.     At all relevant times, Defendants have been Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants have had the power to hire and fire Plaintiffs, have controlled the terms and conditions of employment, and have determined the rate and method of any compensation in exchange for Plaintiffs' services.

50.     In each year from 2014 to the present date, Defendants have, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

51.     In addition, upon information and belief, Defendants and/or their enterprise have been directly engaged in interstate commerce. As an example, numerous items that are used in the restaurants on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

52.     Plaintiffs are both current and former employees of Defendants who ostensibly have been employed as delivery workers. However, they have spent over 20% of each shift performing the non-tipped duties described above.

53.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Agustin Morales Campos*

54.     Plaintiff Morales has been employed by Defendants from approximately May 2014 until on or about May 2018 and from approximately October 2018 until the present date.

55.     Defendants have ostensibly employed Plaintiff Morales as a delivery worker.

56.     However, Plaintiff Morales has also been required to spend a significant portion of his work day performing the non-tipped duties described above.

57.     Although Plaintiff Morales has ostensibly been employed as a delivery worker, he has spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

58.     Plaintiff Morales has regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

59.     Plaintiff Morales's work duties have required neither discretion nor independent judgment.

60.     Throughout his employment with Defendants, Plaintiff Morales has regularly worked in excess of 40 hours per week.

61.     From approximately May 2014 until on or about May 2015, Plaintiff Morales worked at the West 169th Street location from approximately 11:15 a.m. until on or about 12:00 a.m. to 12:30 a.m., six days a week (typically 76.5 to 79.5 hours per week).

62.     From approximately May 2015 until on or about May 2018, Plaintiff Morales worked at the West 169th Street location from approximately 11:15 a.m. until on or about 12:00 a.m. to 12:30 a.m., five days a week and from approximately 4:00 p.m. until on or about 12:00 a.m. to 12:30 a.m., one day a week (typically 84.5 to 88 hours per week).

63.     From approximately October 2018 until the present date, Plaintiff Morales has worked from approximately 11:15 a.m. until on or about 12:00 a.m. to 12:30 a.m., two days a week at the West 169th Street location and from approximately 11:15 a.m. until on or about 12:00 a.m. to 12:30 a.m., two days a week at the West 181st Street location (typically 47 to 49 hours per week).

64.     Throughout his employment, Defendants have paid Plaintiff Morales his wages in cash.

65.     From approximately May 2014 until on or about January 2017, Defendants paid Plaintiff Morales a fixed salary of $65 per day.

66.     From approximately January 2017 until the present date, Defendants have paid Plaintiff Morales a fixed salary of $70 per day.

67.     Plaintiff Morales's pay has never varied even when he has been required to stay later or work a longer day than his usual schedule.

68.     For example, Defendants have required Plaintiff Morales to work an additional 30 minutes past his scheduled departure time everyday, and have not paid him for the additional time he has worked.

69.     Defendants have never granted Plaintiff Morales any breaks or meal periods of any kind.

70.     Plaintiff Morales has never been notified by Defendants that his tips are being included as an offset for wages.

71.     Defendants have not accounted for these tips in any daily or weekly accounting of Plaintiff Morales's wages.

72.     Plaintiff Morales has not been required to keep track of his time, nor to his knowledge, have the Defendants utilize any time tracking device such as punch cards, that accurately reflect his actual hours worked.

73.     Defendants have required Plaintiff Morales to sign a document, the contents of which he has not been allowed to review in detail, in order to release his weekly pay.

74.     On a number of occasions, Defendants have required Plaintiff Morales to sign a document, the contents of which he has not been allowed to review in detail.

75.     No notification, either in the form of posted notices or other means, has ever been given to Plaintiff Morales regarding overtime and wages under the FLSA and NYLL.

76.     Defendants have never provided Plaintiff Morales an accurate statement of wages, as required by NYLL 195(3).

77.     Defendants have never given any notice to Plaintiff Morales, in English and in Spanish (Plaintiff Morales's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

78.     Defendants have required Plaintiff Morales to purchase "tools of the trade" with his own funds—including an electric bicycle, bicycle maintenance, a helmet, and a vest.

*Plaintiff Agustin Rosales Salazar*

79.     Plaintiff Rosales was employed by Defendants from approximately May 2017 until on or about May 1, 2019.

80.     Defendants ostensibly employed Plaintiff Rosales as a delivery worker.

81.     However, Plaintiff Rosales was also required to spend a significant portion of his work day performing the non-tipped duties described above.

82.     Although Plaintiff Rosales ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

83.     Plaintiff Rosales regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

84.     Plaintiff Rosales's work duties required neither discretion nor independent judgment.

85.     Throughout his employment with Defendants, Plaintiff Rosales regularly worked in excess of 40 hours per week.

86.     From approximately May 2017 until on or about May 1, 2019, Plaintiff Rosales worked at the West 181st Street location from approximately 11:00 a.m. until on or about 12:00 a.m., four days a week and from approximately 11:00 a.m. until on or about 12:30 a.m., two days a week (typically 79 hours per week).

87.     Throughout his employment, Defendants paid Plaintiff Rosales his wages in cash.

88.     From approximately May 2017 until on or about May 1, 2019, Defendants paid Plaintiff Rosales a fixed salary of $65 per day.

89.     Plaintiff Rosales's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

90.     For example, Defendants required Plaintiff Rosales to work an additional 30 minutes past his scheduled departure time three days a week, and did not pay him for the additional time he worked.

91.     Defendants never granted Plaintiff Rosales any breaks or meal periods of any kind.

92.     Plaintiff Rosales was never notified by Defendants that his tips were being included as an offset for wages.

93.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Rosales's wages.

94.     Plaintiff Rosales was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

95.     Defendants required Plaintiff Rosales to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

96.    On a number of occasions, Defendants required Plaintiff Rosales to sign a document, the contents of which he was not allowed to review in detail.

97.    In addition, in order to get paid, Plaintiff Rosales was required to sign a document in which Defendants misrepresented the hours that he worked per week.

98.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Rosales regarding overtime and wages under the FLSA and NYLL.

99.    Defendants did not provide Plaintiff Rosales an accurate statement of wages, as required by NYLL 195(3).

100.    Defendants did not give any notice to Plaintiff Rosales, in English and in Spanish (Plaintiff Rosales's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

101.    Defendants required Plaintiff Rosales to purchase "tools of the trade" with his own funds—including a bicycle, a helmet, a vest, and brakes that had to be changed every 2 weeks.

*Plaintiff Damian Garcia Romano*

102.    Plaintiff Garcia has been employed by Defendants from approximately October 2017 until the present date.

103.    Defendants have employed Plaintiff Garcia as a food preparer and ostensibly as a delivery worker.

104.    However, Plaintiff Garcia has also been required to spend a significant portion of his work day performing the non-tipped duties described above.

105.    Although Plaintiff Garcia has ostensibly been employed as a delivery worker, he has spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

106.    Plaintiff Garcia has regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

107.    Plaintiff Garcia's work duties have required neither discretion nor independent judgment.

108.    Throughout his employment with Defendants, Plaintiff Garcia has regularly worked in excess of 40 hours per week.

109.    From approximately October 2017 until on or about December 2017, Plaintiff Garcia worked from approximately 11:00 a.m. until on or about 11:00 p.m. to 12:30 a.m., four days a week at the West 181st Street location and from approximately 11:00 a.m. until on or about 11:00 p.m. to 12:30 a.m., one day a week at the West 169th Street location (typically 60 to 67.5 hours per week).

110.    From approximately January 2018 until on or about April 28, 2019, Plaintiff Garcia worked at the West 181st Street location from approximately 11:00 a.m. until on or about 4:00 p.m. as a food preparer and then as a delivery worker from approximately 4:00 p.m. until on or about 12:00 a.m. to 12:30 a.m. one day a week and from approximately 11:00 a.m. until on or about 12:00 a.m. to 12:30 a.m., four days a week as a delivery worker (typically 60 to 67.5 hours per week).

111.    From approximately April 29, 2019 until the present date, Plaintiff Garcia has worked as a food preparer at the West 169th Street location from approximately 10:30 a.m. until on or about 4:00 p.m. and then from approximately 4:00 p.m. until on or about 1:00 a.m. as a delivery worker one day a week, and has worked as a delivery worker at the West 181st Street location from approximately 11:00 a.m. until on or about 12:30 a.m. five days a week (typically 82 hours per week).

112.    From approximately October 2017 until on or about January 2019, Defendants have paid Plaintiff Garcia his wages in cash.

113.    From approximately February 2019 until the present date, Defendants have paid Plaintiff Garcia his wages in a combination of check and cash.

114.    From approximately October 2017 until on or about January 2019, Defendants paid Plaintiff Garcia a fixed salary of $65 per day.

115.    From approximately February 2019 until on or about the present date, Defendants paid Plaintiff Garcia a fixed salary of $260 per week, $200 by personal check and $60 in cash.

116.    Plaintiff Garcia's pay has never varied even when he has been required to stay later or work a longer day than his usual schedule.

117.    For example, Defendants have required Plaintiff Garcia to work one to one and a half hours past his scheduled departure time every day, and have not paid him for the additional time he has worked.

118.    Defendants have never granted Plaintiff Garcia any breaks or meal periods of any kind.

119.    Plaintiff Garcia has never been notified by Defendants that his tips are being included as an offset for wages.

120.    Defendants have not accounted for these tips in any daily or weekly accounting of Plaintiff Garcia's wages.

121.    Defendants have withheld a portion of Plaintiff Garcia's tips; specifically, Defendants have withheld $5.00 per day.

122.    Plaintiff Garcia has not been required to keep track of his time, nor to his knowledge, have the Defendants utilize any time tracking device such as punch cards, that accurately reflect his actual hours worked.

123.    Defendants have required Plaintiff Garcia to sign a document, the contents of which he has not been allowed to review in detail, in order to release his weekly pay.

124.    In addition, in order to get paid, Plaintiff Garcia has been required to sign a document in which Defendants have misrepresented the hours that he has worked per week.

125.    No notification, either in the form of posted notices or other means, has ever been given to Plaintiff Garcia regarding overtime and wages under the FLSA and NYLL.

126.    Defendants have never provided Plaintiff Garcia an accurate statement of wages, as required by NYLL 195(3).

127.    Defendants have never given any notice to Plaintiff Garcia, in English and in Spanish (Plaintiff Garcia's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

128.    Defendants have required Plaintiff Garcia to purchase "tools of the trade" with his own funds—including two bicycles, a helmet, and a vest.

*Plaintiff Jose Campos*

129.    Plaintiff Campos was employed by Defendants from approximately May 2014 until on or about May 2016, from approximately November 2016 until on or about May 20, 2017, and from approximately December 11, 2017 until on or about May 1, 2019.

130.    Defendants ostensibly employed Plaintiff Campos as a delivery worker.

131.    However, Plaintiff Campos was also required to spend a significant portion of his work day performing the non-tipped duties described above.

132.    Although Plaintiff Campos ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

133.    Plaintiff Campos regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

134.    Plaintiff Campos's work duties required neither discretion nor independent judgment.

135.    Throughout his employment with Defendants, Plaintiff Campos regularly worked in excess of 40 hours per week.

136.    From approximately May 2014 until on or about May 2016, Plaintiff Campos worked at the West 169th Street location from approximately 11:00 a.m. until on or about 12:00 a.m., four days a week and from approximately 11:00 a.m. until on or about 12:30 a.m., two days a week (typically 79 hours per week).

137.    From approximately November 2016 until on or about May 2017, Plaintiff Campos worked at the West 181st Street location from approximately 11:00 a.m. until on or about 12:30 a.m., three days a week, from approximately 11:00 a.m. until on or about 12:00 a.m., two days a week, and from approximately 4:00 p.m. until on or about 12:00 a.m., one day a week (typically 74.5 hours per week).

138.    From approximately December 2017 until on or about May 2019, Plaintiff Campos worked from approximately 11:00 a.m. until on or about 12:00 a.m., three days a week, from approximately 4:00 p.m. until on or about 12:00 a.m. at the West 181st Street location, one day a week, and from approximately 11:00 a.m. until on or about 12:00 a.m. at the West 169th Street location, two days a week (typically 73 hours per week).

139.    Throughout his employment, Defendants paid Plaintiff Campos his wages in cash.

140.    From approximately May 2014 until on or about May 2016, Defendants paid Plaintiff Campos a fixed salary of $65 per day.

141.    From approximately November 2016 until on or about May 2019, Defendants paid Plaintiff Campos a fixed salary of $70 per day.

142.    Plaintiff Campos's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

143.    For example, Defendants required Plaintiff Campos to work an additional thirty minutes past his scheduled departure time three days a week, and did not pay him for the additional time he worked.

144.    Defendants never granted Plaintiff Campos any breaks or meal periods of any kind.

145.    Plaintiff Campos was never notified by Defendants that his tips were being included as an offset for wages.

146.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Campos's wages.

147.    Plaintiff Campos was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

148.    Defendants required Plaintiff Campos to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

149.    In addition, in order to get paid, Plaintiff Campos was required to sign a document in which Defendants misrepresented the hours that he worked per week.

150.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Campos regarding overtime and wages under the FLSA and NYLL.

151.    Defendants did not provide Plaintiff Campos an accurate statement of wages, as required by NYLL 195(3).

152.     Defendants did not give any notice to Plaintiff Campos, in English and in Spanish (Plaintiff Campos's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

153.     Defendants required Plaintiff Campos to purchase "tools of the trade" with his own funds—including an electric bicycle, bicycle maintenance, a helmet, and a vest.

*Plaintiff Jose Trinidad Campos*

154.     Plaintiff Trinidad was employed by Defendants from approximately October 2018 until on or about May 10, 2019.

155.     Defendants ostensibly employed Plaintiff Trinidad as a delivery worker.

156.     However, Plaintiff Trinidad was also required to spend a significant portion of his work day performing the non-tipped duties described above.

157.     Although Plaintiff Trinidad ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

158.     Plaintiff Trinidad regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

159.     Plaintiff Trinidad's work duties required neither discretion nor independent judgment.

160.     Throughout his employment with Defendants, Plaintiff Trinidad regularly worked in excess of 40 hours per week.

161.     From approximately October 2018 until on or about May 10, 2019, Plaintiff Trinidad worked at the West 169th Street location from approximately 11:00 a.m. until on or about 12:00 a.m., three days a week, from approximately 11:00 a.m. until on or about 12:30 a.m., two days a week,

and from approximately 4:00 p.m. until on or about 12:00 a.m., one day a week (typically 74 hours per week).

162.    Throughout his employment, Defendants paid Plaintiff Trinidad his wages in cash.

163.    From approximately October 2018 until on or about May 10, 2019, Defendants paid Plaintiff Trinidad a fixed salary of $70 per day.

164.    Plaintiff Trinidad's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

165.    For example, Defendants required Plaintiff Trinidad to work an additional 30 minutes past his scheduled departure time two days a week, and did not pay him for the additional time he worked.

166.    Defendants never granted Plaintiff Trinidad any breaks or meal periods of any kind.

167.    Plaintiff Trinidad was never notified by Defendants that his tips were being included as an offset for wages.

168.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Trinidad's wages.

169.    Plaintiff Trinidad was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

170.    Defendants required Plaintiff Trinidad to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

171.    In addition, in order to get paid, Plaintiff Trinidad was required to sign a document in which Defendants misrepresented the hours that he worked per week.

172.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Trinidad regarding overtime and wages under the FLSA and NYLL.

173.    Defendants did not provide Plaintiff Trinidad an accurate statement of wages, as required by NYLL 195(3).

174.    Defendants did not give any notice to Plaintiff Trinidad, in English and in Spanish (Plaintiff Trinidad's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

175.    Defendants required Plaintiff Trinidad to purchase "tools of the trade" with his own funds—including a bicycle, a helmet, a vest, and brakes that had to be changed every 2 weeks.

*Plaintiff Miguel Angel Leyva Galicia*

176.    Plaintiff Leyva has been employed by Defendants from approximately July 2018 until the present date.

177.    Defendants have ostensibly employed Plaintiff Leyva as a delivery worker.

178.    However, Plaintiff Leyva has also been required to spend a significant portion of his work day performing the non-tipped duties described above.

179.    Although Plaintiff Leyva has ostensibly been employed as a delivery worker, he has spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

180.    Plaintiff Leyva has regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

181.    Plaintiff Leyva's work duties have required neither discretion nor independent judgment.

182.    Throughout his employment with Defendants, Plaintiff Leyva has regularly worked in excess of 40 hours per week.

183.    From approximately July 2018 until on or about April 28, 2019, Plaintiff Leyva worked at the West 169th Street location from approximately 4:00 p.m. until on or about 12:30 a.m., three days a week, from approximately 11:00 a.m. until on or about 11:30 a.m., two days a week, and from approximately 4:00 p.m. until on or about 12:30 a.m., one day a week (typically 73 hours per week).

184.    From approximately April 29, 2019 until the present date, Plaintiff Leyva has worked at the West 169th Street location from approximately 11:00 a.m. until on or about 12:30 a.m., four days a week and from approximately 11:00 a.m. until on or about 1:00 a.m., three days a week (typically 96 hours per week).

185.    Throughout his employment, Defendants have paid Plaintiff Leyva his wages in cash.

186.    From approximately July 2018 until on or about March 2019, Defendants paid Plaintiff Leyva a fixed salary of $65 per day.

187.    From approximately April 1, 2019 until on or about April 28, 2019, Defendants paid Plaintiff Leyva a fixed salary of $400 per week.

188.    From approximately April 29, 2019 until on or about the present date, Defendants paid Plaintiff Leyva a fixed salary of $490 per week.

189.    Plaintiff Leyva's pay has never varied even when he has been required to stay later or work a longer day than his usual schedule.

190.    For example, Defendants have required Plaintiff Leyva to work an additional one hour past his scheduled departure time everyday, and have not paid him for the additional time he has worked.

191.    Defendants have never granted Plaintiff Leyva any breaks or meal periods of any kind.

192.    Plaintiff Leyva has never been notified by Defendants that his tips are being included as an offset for wages.

193.    Defendants have not accounted for these tips in any daily or weekly accounting of Plaintiff Leyva's wages.

194.    Defendants have withheld a portion of Plaintiff Leyva's tips; specifically, Defendants have withheld a portion of all the tips customers wrote in for Plaintiff Leyva.

195.    Plaintiff Leyva has not been required to keep track of his time, nor to his knowledge, have the Defendants utilize any time tracking device such as punch cards, that accurately reflect his actual hours worked.

196.    Defendants have required Plaintiff Leyva to sign a document, the contents of which he has not been allowed to review in detail, in order to release his weekly pay.

197.    On a number of occasions, Defendants have required Plaintiff Leyva to sign a document, the contents of which he has not been allowed to review in detail.

198.    No notification, either in the form of posted notices or other means, has ever been given to Plaintiff Leyva regarding overtime and wages under the FLSA and NYLL.

199.    Defendants have never provided Plaintiff Leyva an accurate statement of wages, as required by NYLL 195(3).

200.    Defendants have never given any notice to Plaintiff Leyva, in English and in Spanish (Plaintiff Leyva's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

201.     Defendants have required Plaintiff Leyva to purchase "tools of the trade" with his own funds—including two bicycles, bicycle maintenance, and one helmet.

*Plaintiff Santiago Trinidad Peral*

202.     Plaintiff Santiago has been employed by Defendants from approximately September 21, 2014 until the present date.

203.     Defendants have ostensibly employed Plaintiff Santiago as a delivery worker.

204.     However, Plaintiff Santiago has also been required to spend a significant portion of his work day performing the non-tipped duties described above.

205.     Although Plaintiff Santiago has ostensibly been employed as a delivery worker, he has spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

206.     Plaintiff Santiago has regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

207.     Plaintiff Santiago's work duties have required neither discretion nor independent judgment.

208.     Throughout his employment with Defendants, Plaintiff Santiago has regularly worked in excess of 40 hours per week.

209.     From approximately September 21, 2014 until the present date, Plaintiff Santiago has worked at the West 169th Street location from approximately 11:00 a.m. until on or about 12:00 a.m., three days a week, from approximately 11:00 a.m. until on or about 12:30 a.m., two days a week, and from approximately 4:00 p.m. until on or about 12:00 a.m., one day a week (typically 74 hours per week).

210.    Throughout his employment, Defendants have paid Plaintiff Santiago his wages in cash.

211.    From approximately September 21, 2014 until on or about November 2018, Defendants paid Plaintiff Santiago a fixed salary of $65 per day.

212.    From approximately November 2018 until the present date, Defendants have paid Plaintiff Santiago a fixed salary of $75 per day.

213.    Plaintiff Santiago's pay has never varied even when he has been required to stay later or work a longer day than his usual schedule.

214.    For example, Defendants have required Plaintiff Santiago to work an additional 30 minutes past his scheduled departure time two days a week, and have not paid him for the additional time he has worked.

215.    Defendants have never granted Plaintiff Santiago any breaks or meal periods of any kind.

216.    Plaintiff Santiago has never been notified by Defendants that his tips are being included as an offset for wages.

217.    Defendants have not accounted for these tips in any daily or weekly accounting of Plaintiff Santiago's wages.

218.    Plaintiff Santiago has not been required to keep track of his time, nor to his knowledge, have the Defendants utilize any time tracking device such as punch cards, that accurately reflect his actual hours worked.

219.    Defendants have required Plaintiff Santiago to sign a document, the contents of which he has not been allowed to review in detail, in order to release his weekly pay.

220.    On a number of occasions, Defendants have required Plaintiff Santiago to sign a document, the contents of which he has not been allowed to review in detail.

221.    In addition, in order to get paid, Plaintiff Santiago has been required to sign a document in which Defendants have misrepresented the hours that he has worked per week.

222.    No notification, either in the form of posted notices or other means, has ever been given to Plaintiff Santiago regarding overtime and wages under the FLSA and NYLL.

223.    Defendants have never provided Plaintiff Santiago an accurate statement of wages, as required by NYLL 195(3).

224.    Defendants have never given any notice to Plaintiff Santiago, in English and in Spanish (Plaintiff Santiago's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

225.    Defendants have required Plaintiff Santiago to purchase "tools of the trade" with his own funds—including a bicycle, a helmet, a vest, and bicycle maintenance per month.

*Plaintiff Silvestre Basurto Montiel*

226.    Plaintiff Basurto has been employed by Defendants from approximately September 2012 until on or about December 2012 and from approximately April 2014 until the present date.

227.    Defendants have ostensibly employed Plaintiff Basurto as a delivery worker.

228.    However, Plaintiff Basurto has also been required to spend a significant portion of his work day performing the non-tipped duties described above.

229.    Although Plaintiff Basurto has ostensibly been employed as a delivery worker, he has spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

230.    Plaintiff Basurto has regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

231.    Plaintiff Basurto's work duties have required neither discretion nor independent judgment.

232.    Throughout his employment with Defendants, Plaintiff Basurto has regularly worked in excess of 40 hours per week.

233.    From approximately April 2014 until the present date, Plaintiff Basurto has worked at the West 169th Street location from approximately 11:00 a.m. until on or about 12:00 a.m., four days a week and from approximately 11:00 a.m. until on or about 1:00 a.m., two days a week (typically 80 hours per week).

234.    Throughout his employment, Defendants have paid Plaintiff Basurto his wages in cash.

235.    From approximately April 2014 until the present date, Defendants have paid Plaintiff Basurto a fixed salary of $65 per day.

236.    Plaintiff Basurto's pay has never varied even when he has been required to stay later or work a longer day than his usual schedule.

237.    For example, Defendants have required Plaintiff Basurto to work an additional 1 hour past his scheduled departure time three days a week, and have not paid him for the additional time he has worked.

238.    Defendants have never granted Plaintiff Basurto any breaks or meal periods of any kind.

239.    Plaintiff Basurto has never been notified by Defendants that his tips are being included as an offset for wages.

240. Defendants have not accounted for these tips in any daily or weekly accounting of Plaintiff Basurto's wages.

241. Defendants have withheld a portion of Plaintiff Basurto's tips; specifically, Defendants have withheld a percentage of the tips customers wrote in for Plaintiff Basurto.

242. Plaintiff Basurto has not been required to keep track of his time, nor to his knowledge, have the Defendants utilize any time tracking device such as punch cards, that accurately reflect his actual hours worked.

243. Defendants have required Plaintiff Basurto to sign a document, the contents of which he has not been allowed to review in detail, in order to release his weekly pay.

244. On a number of occasions, Defendants have required Plaintiff Basurto to sign a document, the contents of which he has not been allowed to review in detail.

245. No notification, either in the form of posted notices or other means, has ever been given to Plaintiff Basurto regarding overtime and wages under the FLSA and NYLL.

246. Defendants have never provided Plaintiff Basurto an accurate statement of wages, as required by NYLL 195(3).

247. Defendants have never given any notice to Plaintiff Basurto, in English and in Spanish (Plaintiff Basurto's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

248. Defendants have required Plaintiff Basurto to purchase "tools of the trade" with his own funds—including a bicycle, a helmet, and a vest.

*Defendants' General Employment Practices*

249. At all times relevant to this Complaint, Defendants have maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours

a week without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

250.    Plaintiffs have been victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they have been owed for the hours they have worked.

251.    Defendants' pay practices have resulted in Plaintiffs not receiving payment for all their hours worked, and have resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

252.    Defendants have habitually required Plaintiffs to work additional hours beyond their regular shifts but have not provided them with any additional compensation.

253.    Defendants have required Plaintiffs and all other delivery workers to perform general non-tipped tasks in addition to their primary duties as delivery workers.

254.    Plaintiffs and all similarly situated employees, have ostensibly been employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing the non-tipped duties outlined above.

255.     Plaintiffs' duties have not been incidental to their occupation as tipped workers, but instead have constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

256.    Plaintiffs and all other tipped workers have been paid at a rate that is lower than the required tip-credit rate by Defendants.

257.    However, under state law, Defendants are not entitled to a tip credit because the tipped worker's and these Plaintiffs' non-tipped duties exceed 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

258.    New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

259.    In violation of federal and state law as codified above, Defendants have classified Plaintiffs and other tipped workers as tipped employees, and have paid them at a rate that is lower than the required lower tip-credit rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

260.    Defendants have failed to inform Plaintiffs who received tips that Defendants have intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

261.    Defendants have failed to inform Plaintiffs who received tips, that their tips are being credited towards the payment of the minimum wage.

262.    Defendants have failed to maintain a record of tips earned by Plaintiffs who have worked as delivery workers for the tips they received.

263.    As part of its regular business practice, Defendants have intentionally, willfully, and repeatedly harmed Plaintiffs who have received tips, by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice included depriving delivery workers of a portion of the tips earned during the course of employment.

264.    Defendants have unlawfully misappropriated charges purported to be gratuities received by tipped Plaintiffs, and other tipped employees, in violation of New York Labor Law § 196-d (2007).

265.     Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive or forgo the tip credit and pay them the full hourly minimum wage.

266.     Defendants have willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

267.     Defendants' time keeping system has not reflect the actual hours that Plaintiffs have worked.

268.     On a number of occasions, Defendants have required Plaintiffs to sign a document the contents of which they have not been allowed to review in detail.

269.     Defendants have required Plaintiffs to sign a document that reflects inaccurate or false hours worked.

270.     Defendants have paid Plaintiffs their wages in cash and a combination of personal check and cash.

271.     Defendants have failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

272.     Upon information and belief, these practices by Defendants have been done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) have worked, and to avoid paying Plaintiffs properly for their full hours worked.

273.     Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

274.     Defendants' unlawful conduct is intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

275.     Defendants have failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

276.     Defendants have failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

277.     Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

278.    At all relevant times, Plaintiffs and other members of the FLSA Class have been similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

279.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

280.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

281.    At all times relevant to this action, Defendants have been Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants have had the power to hire and fire Plaintiffs (and the FLSA Class Members), have controlled the terms and conditions of their employment, and have determined the rate and method of any compensation in exchange for their employment.

282.    At all times relevant to this action, Defendants have been engaged in commerce or in an industry or activity affecting commerce.

283.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

284.    Defendants have failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

285.    Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate is willful within the meaning of 29 U.S.C. § 255(a).

286.     Plaintiffs (and the FLSA Class members) have been damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

287.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

288.     Defendants, in violation of 29 U.S.C. § 207(a)(1), have failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

289.     Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation has been willful within the meaning of 29 U.S.C. § 255(a).

290.     Plaintiffs (and the FLSA Class members) have been damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

291.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

292.     At all times relevant to this action, Defendants have been Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants have had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

293.     Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, have paid Plaintiffs less than the minimum wage.

294.     Defendants' failure to pay Plaintiffs the minimum wage is willful within the meaning of N.Y. Lab. Law § 663.

295.     Plaintiffs have been damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS

## OF THE NEW YORK STATE LABOR LAW

296.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

297.     Defendants, in violation of N.Y. Lab. Law § 190 *et seq.*, and supporting regulations of the New York State Department of Labor, have failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

298.     Defendants' failure to pay Plaintiffs overtime compensation is willful within the meaning of N.Y. Lab. Law § 663.

299.     Plaintiffs have been damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

## VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

## OF THE NEW YORK COMMISSIONER OF LABOR

300.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

301.     Defendants have failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours has exceeded ten hours in violation of NYLL §§ 650 *et seq.* and 12 N.Y.C.R.R. §§ 146-1.6.

302.     Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours is willful within the meaning of NYLL § 663.

303.     Plaintiffs have been damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

**VIOLATION OF THE NOTICE AND RECORDKEEPING**

**REQUIREMENTS OF THE NEW YORK LABOR LAW**

304.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

305.     Defendants have failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

306.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

**SEVENTH CAUSE OF ACTION**

**VIOLATION OF THE WAGE STATEMENT PROVISIONS**

**OF THE NEW YORK LABOR LAW**

307.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

308.     With each payment of wages, Defendants have failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the

regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

309.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

## RECOVERY OF EQUIPMENT COSTS

310.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

311.    Defendants have required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

312.    Plaintiffs have been damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

## UNLAWFUL DEDUCTIONS FROM TIPS IN VIOLATION

## OF THE NEW YORK LABOR LAW

313.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

314.    At all relevant times, Defendants have been Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

315.    New York State Labor Law § 196-d prohibits any employer or his agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

316.    Defendants have unlawfully misappropriated a portion of Plaintiffs' tips that have been received from customers.

317.    Defendants have knowingly and intentionally retained a portion of Plaintiffs' tips in violations of the NYLL and supporting Department of Labor Regulations.

Plaintiffs have been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants have violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)    Declaring that Defendants have violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)    Declaring that Defendants have violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)    Declaring that Defendants' violations of the provisions of the FLSA are willful as to Plaintiffs and the FLSA Class members;

(f)     Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)     Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants have violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)     Declaring that Defendants have violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)     Declaring that Defendants have violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs;

(k)     Declaring that Defendants have violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(l)     Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order are willful as to Plaintiffs;

(m)     Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(n)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(o)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(p)     Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(q)     Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(r)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(s)     All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated:  New York, New York

May 22, 2019

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:     /s/ Michael Faillace
Michael Faillace [MF-8436]
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510                                      Telephone: (212) 317-1200
New York, New York 10165                                      Facsimile: (212) 317-1620
————

Faillace@employmentcompliance.com

May 13, 2019

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                      Agustin Morales Campos

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                       13 de Mayo 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

May 13, 2019

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                        Agustin Rosales Salazar

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                        13 de mayo 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42ⁿᵈ Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

May 13, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Damian Garcia Romano

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     13 de mayo 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

May 13, 2019

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Jose Campos

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     13 de Mayo 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

May 13, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Jose Trinidad Campos

Legal Representative / Abogado:          Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                            13 de mayo 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

May 13, 2019
BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    <u>Miguel Angel Leyva Galicia</u>

Legal Representative / Abogado:    <u>Michael Faillace & Associates, P.C.</u>

Signature / Firma:                _____

Date / Fecha:                     <u>13 de mayo de 2019</u>

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

May 13, 2019
BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Santiago Campos Peral

Legal Representative / Abogado:          Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                         13 de mayo de 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

May 13, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:    Silvestre Basurto

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:    13 de mayo 2019

*Certified as a minority-owned business in the State of New York*